John W. Millar, Appellee, v. Oliver Sollitt, Appellant.

### Gen. No. 17,510.

MALICIOUS PROSECUTION—*when judgment reversed.* A judgment against defendant in malicious prosecution is reversed where the court is satisfied from the record that appellant had probable cause for believing appellee guilty of the offense charged.

Action in case for malicious prosecution. Appeal from the Superior Court of Cook county; the HON. H. C. MORAN, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed. Opinion filed November 12, 1912.

GARNETT & GARNETT, for appellant; EUGENE H. GARNETT, of counsel.

I. C. WOOD, for appellee.

MR. PRESIDING JUSTICE CLARK delivered the opinion of the court.

Judgment was rendered in the Superior Court in favor of appellee and against appellant in a suit for an alleged malicious prosecution. Appellee appears to have abandoned the case in this court and has filed no brief.

On October 21, 1899, Sollitt caused the arrest of Millar for an alleged violation of section 121 of the Criminal Code, which provides that "Any person, after once selling, bartering or disposing of any tract

or tracts of land  *  *  *  who shall again knowingly and fraudulently sell, barter or dispose of the same tract or tracts of land,  *  *  *  or shall knowingly and fraudulently execute any bond or agreement to sell or barter, or dispose of the same land  *  *  *  to any other person for a valuable consideration, shall be imprisoned in the penitentiary not less than one year nor more than ten years.''

On October 4, 1899, after previous negotiations between the parties, a deed was made by Millar and his wife to Sollitt for a one-fourth interest in certain property in Lake county, Illinois, and was delivered to Sollitt, the purchase price being paid. The land had upon it a building formerly used as a club house. It appears that prior to this time Millar had left with his attorney a deed of the same property, in which Dr. Moore was named as grantee. The deed to Sollitt was acknowledged and delivered about half past one in the afternoon. The deed from Millar and his wife to Moore was deposited by Millar's attorney in a mail box, with a special delivery stamp on the envelop, so that it reached the recorder's office, in Waukegan, the county seat, at 5:30 P. M. on the same day. The abstract of title, which was in Sollitt's hands at the time the deed to him was delivered, showed title in Millar. Some time after October 4th, and before taking out the warrant for the arrest of Millar, Sollitt learned that the deed to Moore had been recorded. When he charged Millar and Moore with swindling him in the transaction he was told by Millar—and Millar in his testimony reiterates what he then said—that the deed made by himself and wife to Moore was for the purpose of getting the title out of his name because of insistent creditors. He further told Sollitt, and also testified at the trial, that a deed had been made by Moore to Mrs. Millar, which was to be recorded by his attorney at the same time that the deed to Moore was recorded, but that his attorney neglected to do this. As a matter of fact, a deed from Moore to Mrs

Millar appears to have been recorded October 26, 1899, but there is testimony in the record tending to show that no properly executed deed from Moore to Mrs. Millar was in the possession of Millar's attorney on October 4th or prior thereto. Inasmuch as the record would have shown title in Sollitt immediately upon the recording of the deed from Millar and his wife to Sollitt, if the deed from Millar and his wife to Moore had not been previously recorded, the property would have been protected from Millar's creditors, and the transaction whereby Millar and his wife conveyed to Moore for the dubious purpose of protecting the property from Millar's creditors would have been useless. The conclusion is almost irresistible that after making the deed to Sollitt, Millar caused the deed to Moore to be recorded for the purpose of defrauding Sollitt.

Other suspicious circumstances are referred to by appellant's counsel, and his comments thereon would appear to be justified by the record.

It appears that in the transaction Millar's interest in certain personal property contained in the building was transferred to Sollitt by bill of sale. It was arranged between Millar and Sollitt on October 4th that Millar should be allowed to stay on the property for some weeks thereafter. Prior to causing the arrest of Millar, Sollitt had been told by a man in his employ that Millar was shipping away a large amount of this personal property which was covered by the bill of sale.

Prior to the arrest, also, Millar told Sollitt that his attorney had had in his possession two deeds, one from Millar and his wife to Moore, and one from Moore to Mrs. Millar, as heretofore stated, and that both these deeds were sent for record at the same time. This statement was untrue. One of the attorneys for Millar told Sollitt that there had been some arrangement between the other attorney (his partner) and Millar whereby the Moore deed was to be held back

and recorded or not, "as the case might be in case Millar sold."

Sollitt consulted counsel before causing the arrest, and appears to have acted under their advice. There seem to have been two complaints filed, the first one having been dismissed for some informality. Habeas corpus proceedings were brought after the arrest on the second warrant and Millar was discharged, the hearing taking place in the absence of Sollitt, who apparently had the promise of the state's attorney to bring the matter before the next grand jury, the justice before whom the case was heard having held Millar to the grand jury. It would seem that the state's attorney afterwards thought that the proceeding ought to have been brought in Cook county and not in Lake county. We are satisfied that no unprejudiced person on reading the record could come to any other conclusion than that Sollitt had probable cause for believing Millar guilty of the offense charged against him.

We find it unnecessary to consider other questions discussed in appellant's brief.

The judgment will be reversed.

*Reversed.*